IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TONY J. BOONE,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )       Civil No. 10-074-CJP
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
        Defendant.                      )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Tony J. Boone is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB).[1]

## Procedural History

This case has a somewhat complicated procedural history.

Plaintiff first applied for DIB on July 29, 1999, alleging disability beginning on April 17, 1998. (Tr. 98). The application was denied initially and on reconsideration. After holding a hearing, ALJ James M. Mitchell denied the application for benefits in a decision dated March 28, 2001. (Tr. 54-61). At that time, Mr. Boone was represented by attorney Bertram Potter. Mr. Potter filed a late request for review based on the fact that neither he nor plaintiff received the March 28, 2001, decision until January of 2002. Plaintiff had moved from California to Texas in the interim. (Tr. 49). Mr. Potter withdrew from representing plaintiff on May 9, 2005,

---

[1]This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 11.

1

and plaintiff designated his present attorneys as counsel of record shortly thereafter. (Tr. 48 - 48A). Present counsel requested Appeals Council review of the 2001 decision in January, 2006. (Tr. 201-203). By that time, as indicated in counsel's letter, plaintiff had moved to 4106 South Park Drive, Belleville Illinois, 62226. The Appeals Council denied the request for review on the merits, i.e., not because it was untimely, on April 21, 2006, and the 2001 decision of the ALJ became the final agency decision on the 1999 application. (Tr. 38-40). The Notice of Appeals Council Action was mailed to plaintiff at his Belleville address, and to plaintiff's former counsel, but not to the attorneys who were then representing him. Plaintiff did not file a timely complaint seeking judicial review of that decision.

Mr. Boone filed a second application for DIB on April 16, 2004. He was last insured for DIB as of December 31, 2003. (Tr. 1009). Again, he alleged disability as of April 17, 1998. (Tr. 16, 104). The application was denied initially and on reconsideration. After holding a hearing, ALJ Thomas C. Muldoon denied the application for benefits in a decision dated April 11, 2007. (Tr. 16-30). On May 30, 2007, plaintiff's counsel requested Appeals Council review. In his letter, counsel requested that the review of the April, 2007, decision be consolidated with any other appeals pending for Mr. Boone. According to the Court Transcript Index, this letter was located at Tr. 11, but page 11, among other pages, is "not available for inclusion." See, Index, p. 1 & 3.

The Appeals Council denied review in a letter dated July 27, 2007. (Tr. 8-10). The notice also denied the request to consolidate the request for review of the 2001 decision with the request for review of the 2007 decision because the Appeals Council had previously denied review of the 2001 decision on April 21, 2006. (Tr. 8). Once again, this correspondence was mis-addressed. This time, the agency attempted to mail the notice to the correct attorney, Dennis

2

Fox, but the address consisted only of a suite number without a street name or number. See, Tr. 10. However, the notice was directed to plaintiff's correct address on South Park in Belleville. (Tr. 8).

Through counsel, plaintiff filed a complaint seeking review in this Court on December 19, 2007. That case was assigned Case Number 07-878-CJP. Without raising any issue as to timeliness, the Commissioner filed an Agreed Motion to Remand. (Doc. 24). That motion was granted and the case was remanded pursuant to sentence four of 42 U.S.C. §405(g). (Doc. 26). Thereafter, the Appeals Council vacated the ALJ's decision of April 11, 2007, and remanded the case to the ALJ for further proceedings. The Appeals Council's order directed the ALJ to give further consideration to whether plaintiff's impairments meet or equal a listed impairment and to obtain evidence from a medical expert. In addition, if warranted, the ALJ was to give additional consideration to plaintiff's RFC, and to obtain evidence from a vocational expert. (Tr. 993-994).

Updated medical records were submitted, and ALJ Muldoon held a supplemental hearing on November 9, 2009. (Tr. 1146-1157). The ALJ did not obtain evidence from a medical expert. In a decision dated December 3, 2009, the ALJ denied the application. Plaintiff did not request Appeals Council review, and the December 3, 2009, decision became the final agency decision. 20 C.F.R. §404.984(d). Plaintiff thus exhausted his administrative remedies and filed a timely complaint in this Court.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

3

of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

A negative answer at any point in the five-step analytical process, except at the third step, stops the inquiry and leads to a determination that the claimant is not disabled. *Garfield v. Schweiker*, **732 F.2d 605 (7th Cir. 1984)**. If a claimant has satisfied steps one and two, he or she will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Secretary at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, **737 F.2d 714, 715 (7th Cir. 1984).**

This Court reviews the Commissioner's decision denying plaintiff benefits to ensure that the decision is supported by substantial evidence, and that no mistakes of law were made. "The

4

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Plaintiff is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995))**. "Substantial evidence" has been defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richard v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**. Furthermore, an ALJ may not disregard evidence when there is no contradictory evidence. ***Sample v. Shalala*, 999 F.2d 1138, 1143 (7th Cir. 1993)**.

### The Decision of the ALJ

The decision at issue here is dated December 3, 2009. (Tr. 976-984). ALJ Muldoon noted that his prior decision, which had been vacated, contained a "thorough and detailed summary" of the evidence, which he "incorporated by reference." He then stated, "The analysis of the evidence in that decision is also incorporated, except to the extent that the analysis may be invalid, incomplete, or otherwise inconsistent with the analysis in this decision." (Tr. 979).

The ALJ correctly noted that Mr. Boone was last insured for DIB on December 31, 2003. He further noted that the additional medical records that had been submitted after the prior decision reflected treatment well after that date. (Tr. 979). The ALJ's decision therefore focused mainly on the medical evidence that had been submitted in conjunction with the prior

5

decision. The ALJ described these medical records as consisting largely of "a lot of subjective allegations by the claimant." (Tr. 980). ALJ Muldoon recognized that the Appeals Council remand order directed him to obtain evidence from a medical expert, but he declined to do so because he found that there was "no need for one." (Tr. 980).

The ALJ then discussed whether plaintiff's impairments met the requirements of any of the Listings. He decided that they did not. (Tr. 980-982). The ALJ then discussed Mr. Boone's RFC. For reasons that were not explained, the ALJ changed his evaluation of plaintiff's RFC, stating the prior assessment "was much more restrictive than what the preponderance of the medical evidence dated before 2004 demanded." (Tr. 982). The ALJ stated that he "would feel confident" in finding that Mr. Boone had "no 'severe' impairment." The ALJ then stated that he would give the claimant "enough benefit of the doubt" to find that he was unable to do his prior work and should be restricted to light work. (Tr. 982). This RFC differs from the previous RFC assessment in that the prior assessment included nonexertional limitations of not working at unprotected heights or around moving machinery, restriction to simple, repetitive tasks, and limited interactions with co-workers, supervisors and the general public. (Tr. 978).

The ALJ concluded that Mr. Boone was not disabled because he was able to perform a full range of work at the light exertional level. He then went on to observe that there were "probably" no credible nonexertional limitations, but, even if there were, his 30 years of experience in adjudicating Social Security cases led him to conclude that a VE would have testified that there were jobs existing in significant numbers which Mr. Boone could perform. (Tr. 982).

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this

6

Memorandum and Order. Due to the nature of the points raised by plaintiff, only a brief summary of the record is required.

Mr. Boone was born on July 15, 1962, (Tr. 1149). He graduated from high school and attended technical college for two years. He then went into the Army. (Tr. 115). He was in the Army from 1983 through 1998, when he was medically discharged. He has been rated 100 per cent disabled by the Veterans Administration and is now receiving benefits. (Tr. 1151).[2] His military disability is due to migraines, blackouts, PTSD, vertigo, hearing loss and loss of peripheral vision. He developed these conditions following a tooth extraction procedure which caused nerve and muscle damage. (Tr. 1152).

The administrative record contains voluminous medical records going back as far as 1997. (Tr. 416). It is unnecessary to summarize these records in view of the legal issues presented. It suffices to say that the records reflect that plaintiff began to experience "pulsating, throbbing headache" following a tooth extraction in September of 1995. An oral surgeon performed another procedure, but his headaches continued. In 1998, a neurologist noted that the headaches were accompanied by photophobia, phonophobia, nausea, and sometimes vomiting. (Tr. 423). The impression was migraine headache probably activated by the 1995 dental procedure. (Tr. 426).

Plaintiff retired from the military due to temporary disability in April, 1998. (Tr. 216). In June of 1999, the Army changed his disability status to permanent. (Tr. 428).

The medical records reflect that M. Boone has continued to treat for headaches and depression. In October, 1999, Dr. Romm performed a consultative psychiatric

---

[2]Another agency's finding that a claimant is disabled is not binding on the Commissioner. 20 CFR §404.1504

evaluation. (Tr. 433-39). The diagnosis was adjustment reaction to physical problems with depression. Plaintiff's Global Assessment of Functioning score was 80.

In August, 2002, plaintiff began seeing Dr. Shawahin for his headaches. Dr. Shawahin prescribed migraine medication and a sleep-aid, referred Plaintiff to a neurologist, and recommended continuing Prozac for depression. (Tr. 595). On February 23, 2003, he noted increased depression and anxiety, insomnia and persistent headache. (Tr. 597).

The record includes records of treatment at a VA medical facility beginning in 2002. (Tr. 632-677). He was seen by doctors in the neurology department, the oral maxillofacial surgery department and the dental department. He was diagnosed with chronic moderate myofascial pain dysfunction in December, 2002. (Tr. 667). An occlusal guard was provided to him on December 30, 2002. (Tr. 665). In February of 2003, it was noted that he was not taking his medications and was throwing up "all the time." (Tr. 663). In October, 2003, a neurology consult note indicates that his headaches persisted, and that he had constant pain with nausea, photophobia and blurred vision. The neurologist indicated that the etiology of his headaches was unclear. His headaches had some features of migraine, cluster headache, and hemicrania continua, but were not typical of any of these conditions. Anti-migraine drugs had not worked in the past. He recommended trying Verapamil again. (Tr. 655).

There are additional medical records reflecting treatment through 2009. See, Tr. 678-1145. Those records concern treatment occurring after the last insured date, and will not be summarized here.

## Analysis

**1.    The 1999 Application**

As an initial matter, the Court concludes that it cannot entertain a review of the denial of

the 1999 application for DIB. As is explained above, the denial of the 1999 application became final when plaintiff failed to file a timely complaint after the Appeals Council denied review on the merits on April 21, 2006. While the notice was sent to the wrong attorney, it was sent to the correct address for Mr. Boone, and plaintiff has not made any showing that he personally did not receive the notice. Plaintiff did not file a timely complaint seeking judicial review, so the decision became final.

In conjunction with its denial of further review of the ALJ's 2007 decision regarding his 2004 application, the Appeals Council noted that it would not again review the denial of the 2001 decision because the Appeals Council had previously denied review of the 2001 decision on April 21, 2006. (Tr. 8). This Court does not have jurisdiction to review the agency's denial of a request to reopen a previous determination. **Campbell v. Shalala, 988 F.2d 741, 745 (7th Cir. 1993).**

2.     **The 2004 Application**

Plaintiff does not argue in his brief that he met any of the Listings. Any such argument is waived and the Court will not discuss that aspect of the December, 2009, decision.

The December, 2009, decision is legally insufficient in several respects. First, despite the clear direction of the Appeals Council in its remand order, the ALJ did not obtain evidence from a medical expert. Defendant seeks to excuse this omission by pointing out that plaintiff has not argued that medical evidence was necessary on any particular impairment. See, Doc. 19, p. 10. This is a peculiar argument. The Appeals Council had already determined that the ALJ needed evidence from a medical expert "to clarify the nature and severity of the claimant's impairments, including whether the listings are met or equaled." (TR. 994).

It is evident that the ALJ would have benefitted from clarification of the nature and

9

severity of Mr. Boone's impairments, as his findings on this issue were equivocal, at best. Based upon the same medical evidence that was before him in the prior hearing, the ALJ decided that the nonexertional limitations that he had found previously were "probably" not warranted. He described the medical evidence as consisting of "a lot of subjective allegations by the claimant." (Tr. 980). He found that plaintiff's allegation were not credible, but gave no reason for that finding. (Tr. 982).

Social security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." ***Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein**. The ALJ failed to articulate specific reasons for not crediting Mr. Boone's complaints of pain. The ALJ seemed to believe that plaintiff's complaints of pain, especially with regard to his headaches, were not credible because there were no objective findings. This indicates a misunderstanding of the nature of pain. "Pain is always subjective in the sense of being experienced in the brain." ***Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)**. None of the medical evidence in the record suggests that there is any objective test available to confirm that a patient experiences headache pain of the magnitude claimed by Mr. Boone. Despite the clear direction of the Appeals Council to obtain evidence of a medical expert, the ALJ seems to have drawn that conclusion on his own. That was error. An ALJ cannot base his decision on his own "medical findings." ***Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).**

The ALJ's findings as to the nature and severity of Mr. Boone's impairments and his findings as to his RFC are so tentative that they really are not "findings" at all. The ALJ

10

expressed uncertainty as to whether Mr. Boone has any nonexertional limitations. After finding that a claimant has severe impairments which do not meet or equal a Listing, the ALJ is required to make a determination of the claimant's RFC. See, 20 C.F.R. §404.1520(e). The tentative statements here are not sufficiently definite to fulfill the ALJ's responsibility to make a determination of RFC. Further, based on the same medical evidence as was submitted in the prior hearing, the ALJ changed his RFC determination without explaining why. This is legally insufficient, since the ALJ must "rationally articulate the grounds for [his] decision, building an accurate and logical bridge between the evidence and [his] conclusion...." **Blakes v. Barnhart, 331 F.3d 565, 572 (7th Cir. 2003).**

The ALJ compounded his error by finding, in the alternative, that if plaintiff had nonexertional limitations, he was still able to perform jobs which exist in significant numbers. If a claimant has nonexertional limitations which restrict him from a full range of work, the ALJ must obtain the testimony of a vocational expert. **Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994).** It was error for the ALJ to substitute his own opinion for that of a vocational expert.

The above errors compel the conclusion that the final decision of the Commissioner denying plaintiff's 2004 application for DIB must be reversed and remanded pursuant to sentence four of 42 U.S.C. §405(g). However, the decision is remanded only as to the second application for DIB, filed in 2004.

The Court regrets the necessity of remanding this case yet again. However, as the record does not conclusively establish that Mr. Boone was disabled during the relevant time period, the Court cannot order an award of benefits. **Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 356-357 (7th Cir. 2005)**.

## Conclusion

It is therefore **ORDERED** that the Commissioner's final decision denying plaintiff's 1999 application for DIB is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant on plaintiff's claim for review of the final agency decision denying the 1999 application.

It is further **ORDERED** that the Commissioner's final decision denying Mr. Boone's 2004 application for DIB is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff on his claim for review of the final agency decision denying the 2004 application.

**IT IS SO ORDERED.**

**DATED: February 22, 2011.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**United States Magistrate Judge**